UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAR 1 5 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-197-GWU

LENA STEPHENS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Stephens

>Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Stephens

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Stephens

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Lena Stephens, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of asthma, mitral valve prolapse, obesity, a depressive disorder, an anxiety-related disorder, and a personality disorder. (Tr. 23). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Stephens retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 26-9). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and would be precluded from exposure to temperature extremes, dust, fumes, smoke, chemicals, and noxious gases. (Tr. 318-19). The ALJ also specified that the individual would have "limitations" based

7

on her mental impairments but would have a "limited but satisfactory" ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention and concentration, handle detailed and complex instructions, and respond appropriately to changes in the work setting. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 319-20).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

One of the grounds for reversal urged by the plaintiff is that the ALJ failed to consider all of the evidence of restrictions on her activities due to frequent exacerbations of her asthmatic condition. In relation to this, the plaintiff testified at the administrative hearing that she had quit her job because her boss had complained that she was missing too many days of work, and her doctor had advised her to stop working. (Tr. 298). According to her Disability Report, her last day of work was March 7, 2002. (Tr. 77). Office notes from the plaintiff's treating family physician, Dr. Rodney Oakes, showed that he had treated her for breathing problems for almost two years prior to this time. By June, 2001, Dr. Oakes had prescribed a tapering dose of Prednisone for breathing problems (Tr. 153-61), and on subsequent visits, it appeared that this was the only medication that allowed her

to breathe well (Tr. 154-5). She was also given a Proventil inhaler. (Tr. 154). By the March 20, 2002 office visit, Dr. Oakes wrote that the asthma had been giving Mrs. Stephens increasing problems and, additionally, she had been gaining weight on Prednisone and had made unsuccessful attempts to get off this medication. (Tr. 152). She was using the Proventil inhaler "quite a bit of the time," but still became "very dyspneic with activity and starts wheezing more . . . " (Id.). He stated that: "The severity of her asthma limits her ability to be active a great deal and, at this time, I think that it is going to be difficult for her to be able to maintain gainful employment." (Id.).

While the ALJ did summarize some of the plaintiff's treatment from Dr. Oakes, she failed to note his opinion regarding his patient's ability to work. Dr. Oakes did not make further comments about the plaintiff's ability to work, but he did state in July, 2002 that her physical condition was quite poor due to underlying asthma. (Tr. 149).

The Sixth Circuit has noted that the Commissioner's own regulations contain a requirement that the agency will always give good reasons for the weight it gives a treating source's opinion, quoting 20 C.F.R. Section 404.1527(d)(2), and held that "it is an elemental principle of administrative law that agencies are bound to follow their own regulations." Wilson v. Commissioner of Social Security, 378 F.3d 541, 545 (6th Cir. 2004). Only if a treating source's opinion is so patently deficient that the

9

Commissioner could not possibly credit it would a remand not be indicated in such a situation. Id. In the present case, while the opinion of Dr. Oakes might not have been couched in ideal terms for Social Security purposes, it provides direct corroboration for the plaintiff's statement that her physician had advised her to stop working. Moreover, it does not appear to have been considered by the state agency reviewing physicians upon whose opinions the ALJ largely relied for the choice of physical restrictions. (Tr. 210-228). As the plaintiff points out in her brief, the episodic nature of an asthmatic problem could explain the fact that her pulmonary function studies showed only mild problems. (Tr. 142, 145).[1] Since no other examining source offered an opinion on the plaintiff's ability to work, a remand will be required to consider this issue.

Additionally, the ALJ's choice of mental restrictions should be revisited.

The ALJ gave significant weight to the opinions of a consultative psychiatrist, Dr. Kevin Eggerman, who examined Mrs. Stephens on October 9, 2002 and concluded that she had a mood disorder and a personality disorder, with a current Global Assessment of Functioning (GAF) score of 60-65 and the highest GAF score

---

[1] In the context of another episodic illness, Meniere's disease with benign positional vertigo, the Sixth Circuit recently commented in an unpublished case that the lack of medically acceptable clinical and laboratory and diagnostic techniques might be a valid reason for refusing to credit a physician's opinion in the abstract, the ALJ gave no explanation why the physician's opinion was deficient "or what medical evidence or tests would have satisfied the ALJ . . . ." Sharp v. Barnhart, No. 04-6332 (6th Cir. Oct. 26, 2005), slip op. at 12.

for the past year of 65-70. (Tr. 137). GAF scores in this range represent moderate to mild symptoms. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition - Text Revision) (DSM-IV-TR), p. 34. Dr. Eggerman did not complete a formal mental assessment form, but stated that she would have a "fair" ability to relate to co-workers and supervisors (although it would be "negatively impacted by avoidant behavior" and the re-emergence of mood symptoms) and tolerate work-related stress. (Tr. 138). State agency physicians who reviewed the record at this point indicated that Mrs. Stephens would have a "moderately limited" ability to handle detailed instructions, interact appropriately to the general public, and respond appropriately to changes in the work setting. (Tr. 172-8). Subsequently, records were submitted from a Psychiatrist, Syed Umar, reflecting three visits early in 2003, at which the plaintiff was given a diagnosis of Major Depressive Disorder and a GAF of 40 to 50. (Tr. 169-71). Scores in this range represent "serious" symptoms per the DSM-IV-TR. The plaintiff testified that she discontinued treatment with Dr. Umar for financial reasons, and had started treatment at the Adanta outpatient mental health clinic. (Tr. 308). Records from Adanta were submitted showing a psychiatric evaluation on December 31, 2003, which produced diagnoses of "severe" Major Depressive Disorder and an Anxiety Disorder, with a GAF of 50. (Tr. 247-9). Thus, both of the examining sources following Dr. Eggerman indicated a much greater severity of mental disorder, and Dr. Umar was arguably a treating source. While the

11

Stephens

ALJ discounted the plaintiff's mental complaints, in part, because she did not appear to have maintained steady treatment (Tr. 25), the Sixth Circuit has noted that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989).

The decision will be remanded for further consideration.[2]

This the __15__ day of March, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[2] The plaintiff also maintains on appeal that her asthma attacks equaled the requirements of the Commissioner's Listing of Impairment Section 3.03B, which requires a showing of an asthma attack requiring physician intervention occurring at least once every two moths despite prescribed treatment. The plaintiff concedes that there is no evidence of physician intervention taking place with this frequency, but argues that her lack of funds prevented her from obtaining treatment as needed. Nevertheless, no medical opinion has been provided to support the assertion of medical equivalency. See generally Sullivan v. Zebley, 493 U.S. 521, 531 (1990). Therefore, this argument is without merit.

12